The People ex rel. Carl Schurz et al., Appellants, *v.* Frederick Cook, Secretary of State, Respondent.

The People ex rel. William Mertens et al., Appellants, *v.* The Same, Respondent.

Where the property and franchises of a railroad corporation have been sold under mortgage foreclosure and a new corporation organized under the reorganization act (Chap. 430, Laws of 1874, amended by chap. 446, Laws of 1876), the provision of the act of 1886 (Chap. 143, Laws of 1886), providing that any corporation organized under a law of the state, having capital stock, shall pay to the state treasurer a percentage specified upon such stock, applies to the new corporation, and the secretary of state is prohibited from filing any certificate of its articles of association until satisfied that the tax imposed by said act has been paid; and

this, although the mortgage foreclosed was executed prior to the passage of said last mentioned act.

The said act of 1886, as so construed, is not violative of the provision of the Federal 'Constitution declaring that no state shall pass any law impairing the obligation of contracts.

A corporation, organized under said reorganization act, is a new and entirely different one from that whose property and franchises were purchased under the foreclosure proceedings; the right to be a corporation was not mortgaged or purchased, and is only obtained by the purchasers by direct grant from the state, on filing the certificate.

The statutes authorizing the mortgaging of the franchises of corporations are in no sense contracts, on the part of the state, with the purchasers of bonds secured by such a mortgage, that the statutory provisions existing at the time of the execution of the mortgage for the incorporation of the purchasers on foreclosure sale shall remain the same.

(Argued June 25, 1888; decided October 2, 1888.)

APPEALS from orders of the General Term of the Supreme Court in the third judicial department, made November 15, 1887, which affirmed orders of Special Term denying motions by relators, incorporators of certain railroad corporations, organized under the reorganization act (Chap. 430, Laws of 1874, amended by chap. 446, Laws of 1876), for peremptory writs of *mandamus* directed to the secretary of state, requiring him to file in his office their certificates of organization.

The material facts are stated in the opinion

*G. Zabriskie* for appellants. The use of the word " tax " in the act chapter 143, Laws of 1886, is not conclusive in respect to the nature of the payment exacted. (Cooley on Taxation, 1.) Taxation exacts money or services from individuals as and for their respective shares of contribution to any public burden. (*People* v. *Mayor, etc.*, 4 N. Y. 419–424; *Eyre* v. *Jacob*. 14 Gratt. 422.) The payment in question is the price at which the legislature sells corporate franchises to corporators, and is quite different in principle from annual taxes. (*Dartmouth College* v. *Woodward*, 4 Wheat. 518, 692; *State* v. *Parker*, 3 Vroom. 426; *Chilvers* v. *People*, 11 Mich. 43; *People* v. *Thurber*, 13 Ill. 554.) The act of 1886 only applies to cases where the state grants franchises to a corporation. If nothing is granted, there is no consideration for the payment.

(*Am. Silk Works* v. *Solomon*, 6 T. & C. 352.) Franchises. are, in their nature, inalienable. They can be transferred only by the authority of the state. A mortgage of franchises without such authority would be inoperative, and the purchaser, under foreclosure, would take nothing. (*Carpenter* v. *Black Hawk Mining Co.* 65 N. Y. 43, 50; *Thomas* v. *Railroad Co.*, 101 U. S. 71.) The state has authorized railroad corporations to mortgage their franchises. (Laws of 1850, chap. 140, § 28.) That authority signifies a promise by the state that, if the mortgage be foreclosed, the purchaser shall acquire the franchises, and the right to use and enjoy them. (*State Bank* v. *Knoop*, 16 How. 369–384; *Woodruff* v. *Trapnall*, 10 id. 190. *Furman* v. *Nickol*, 8 Wall. 44; *Dartmouth College* v. *Woodward*, 4 Wheat. 578, 689.) If the franchise of corporate existence is mortgaged and passes to the purchaser, then the new corporation does not get it from the state, and there is no consideration for the price of incorporation; but if it is not mortgaged and does not pass to the purchaser, then he has no capacity to use the other franchises which he buys, as the law of this state does not permit individuals to operate railroads. (*Fanning* v. *Osborne*, 102 N. Y. 441; *People* v. *Brooklyn, F. & C. I. R. R. Co.*, 89 id. 75.) The obligation of a contract consists in its binding force on the party who makes it. (*McCracken* v. *Hayward*, 2 How. 608–612; *Virginia Coupon Cases*, 114 U. S. 269–304.) Whatever legislation tends to postpone or retard the enforcement of a contract, or lessens the efficacy of the means provided by law for its enforcement, or diminishes its value, or imposes new conditions upon the performance of it, impairs its obligation. (*Louisiana* v. *New Orleans*, 102 U. S. 203; *Red Rock* v. *Henry*, 106 id. 596–604; *Bronson* v. *Kinzie*, 1 How. 311; *Planters' Bk.* v. *Sharp*, 6 id. 301; *Corbin* v. *Commissioners*, 1 McCrary, 521.) The degree of impairment is not material. (*National Bk.* v. *Sebastian Co.*, 5 Dill. 414; *Von Hoffman* v. *Quincy*, 4 Wall. 535; *Planters' Bk.* v. *Sharp*, 6 How. 301–327; *Murray* v. *Charleston*, 96 U. S. 432–444.) The legislation in force when the mortgages, on which the title of

446 PEOPLE ex rel. SCHURZ et al. *v.* COOK. [Oct.,

Statement of case.

the relators is based, were made, enabled both the railroad company to mortgage the railroad and the franchises necessary for its operation, and the purchasers to exercise those franchises by filing a certificate whereby they became a corporation. This legislation constituted part of the contract of the state. (*Von Hoffman* v. *Quincy*, 4 Wall. 535.) There is no force in the objection that the capital stock of the company has been reduced. (Laws of 1878, chap. 264; *Metz* v. *Buffalo, etc., R. R. Co.*, 58 N. Y. 61; *Atkinson* v. *Marietta & Cin. R. R. Co.*, 15 Ohio St. 21.)

*Charles F. Tabor*, attorney-general, for respondent. The franchises to be corporations possessed by the railroad companies whose mortgages had been foreclosed did not pass to the relators as part of their purchase at the mortgage sales. (*R. R. Co.* v. *Georgia*, 98 U. S. 359; *R. R. Co.* v. *Commissioners*, 112 id. 609.) At common law all franchises were inalienable. A railroad's operating franchise may be transferred only under authority of statute. (*Carpenter* v. *Black Hawk Mining Co.*, 65 N. Y. 43, 50; *Thomas* v. *R. R. Co.*, 101 U. S. 71; Jones on Railroad Securities, § 15; *Comm.* v. *Smith*, 10 Allen, 448, 455; *Memphis R. R. Co.* v. *Comrs.*, 112 U. S. 619; *Eldridge* v. *Smith*, 34 Vt. 484, 490.) The franchises to be corporations possessed by the companies whose mortgages had been foreclosed did not pass to the relators under the statutes providing for reorganization. The policy of such statutes is that a new grant of corporate power is and must be obtained from the sovereign by the purchasers at mortgage sales of railroads before they can operate the franchises. (*Fanning* v. *Osborne*, 102 N. Y. 441; *People* v. *Brooklyn F. & C. I. R. R. Co.*, 89 id. 75, 84; *Memphis R. R. Co.* v. *Comrs.*, 112 U. S. 609; *Coe* v. *C. P. & I. R. R. Co.*, 10 Ohio St. 372, 386.) The relators and their associates can acquire corporate life only by force of a fresh, new grant from the state that will be perfected on their filing a proper certificate of incorporation and otherwise complying with the statutes in that behalf enacted. (*Shields* v. *Ohio*, 95 U. S.

323.) The statutory requirement that the relators and their associates shall pay a fee to the state for the privilege of becoming a corporation violates no constitutional provision. (112 U. S. 609, 621.) The tax provided for by the act of 1886 was clearly within the power of the legislature to impose. It is a price paid for a privilege, a franchise tax. (*People* v. *Home Ins. Co.*, 92 N. Y. 328; *Matter of McPherson*, 104 id. 306, 316, 317; *Provident Inst.* v. *Mass.*, 6 Wall. 611; *La Plata Case*, 92 N. Y. 660.) The state having declared that all new corporations shall pay a tax or fee as a price for the grant from the state of corporate powers, all presumptions are against the claim of the relators. (*People ex rel. Ins. Co.* v. *Davenport*, 91 N. Y. 574, 586.) If the contention of the relators be admitted, and the corporation represented by them is not a new corporation, but the old corporation with a new name, there has been an attempted reduction of capital stock of such corporation from upwards of twenty millions of dollars to fifteen millions of dollars, in a manner not authorized by law. (Laws of 1878, chap. 264.) For this reason the secretary of state was not required to file the certificate offered by the relators. (*People* v. *Nelson* 46 N. Y. 477, 480.)

PECKHAM, J. The question arising is the same in both of above cases, which were argued together, and the facts stated are those specially pertaining to the case which is first above entitled. Certain railroad corporations, properly organized under the laws of this state, duly executed mortgages upon their respective properties and franchises. Subsequently thereto they were consolidated under the provisions of certain consolidation acts of the legislature of this state, not material to be further referred to in detail. After such consolidation the company, thus formed, also duly executed its mortgage for securing the payment of its bonds therewith issued. Default was made in the payment of the bonds issued under each of these various mortgages, and foreclosure proceedings were taken therein and the mortgages duly foreclosed, and the

whole properties and franchises of all the companies were duly sold, under such foreclosure proceedings, and bid in by the relators, who, thereupon, proceeded to form a corporation under the reorganization acts of the legislature of this state, and known as chapter 430 of the Laws of 1874, and chapter 446 of the Laws of 1876, the latter being an amendment of the former act. Pursuant to its provisions the purchasers agreed upon and executed articles of association, and, as the act provided that a certificate of. such articles should be filed in the office of the secretary of state before the parties forming the organization should become a body corporate, the relators applied to the defendant, as secretary of state, to file the same, at the same time tendering to him the proper amount of fees for recording it.

The secretary refused to permit it to be filed, and based his refusal upon the provisions of the act, known as chapter 143 of the Laws of 1886, which provided that every corporation, incorporated under any general or special law of the state, having capital stock divided into shares, should pay to the state treasurer, for the use of the state, a tax of one-eighth of one per centum upon the amount of capital stock which the corporation was authorized to have, and the tax was to be paid upon the incorporation of the corporation, which should have and exercise no corporate powers until the tax was paid; and the secretary of state and all county clerks were prohibited from filing any certificate of articles of association, and from giving any certificate to any such corporation until they were satisfied that the tax had been paid into the state treasury. It was conceded that this tax had not been paid, and the secretary, therefore, refused to file the certificate.

The counsel for the appellants claim that the act of 1886 applies only to cases where the state grants franchises to a corporation, and it was stated that none was granted in such a case as this. They also argued that the reorganization act of 1874, as amended in 1876, in such a case as this, simply continued or revived the franchises of the old corporation under the same charter and with the same immunities and

rights held by the former company. Lastly, they claimed that if the act of 1886 was held to apply to this case, it was unconstitutional as violating the provision of the Federal Constitution that no state should pass any law impairing the obligation of contracts.

We think none of the claims is well founded. The act, by its terms, applies to every corporation, and the tax is payable upon its incorporation, and hence it cannot be restricted in its meaning to those cases only in which the state directly grants some franchise to a corporation other than the franchise to be a corporation. There is nothing in the context which should so restrict the provisions of the act, and there is no view of the question in which such a narrow construction could be even plausibly maintained as against the plain language of the law.

We think it is also plain that, under the reorganization acts above mentioned, when the purchasers at the foreclosure sale undertake to reorganize under those acts, and for that purpose to file in the secretary's office a certificate, upon the filing of which they become a body politic and corporate, the corporation thus formed is a new and an entirely different one from that whose property and franchises the purchasers may have bought under the foreclosure proceedings. It is true that the corporation about to be formed by the filing of the certificate has, by force of the statute, when formed, all the rights, franchises, powers, privileges and immunities which were possessed before such sale by the corporation whose property was sold; but that does not make the corporation the same by any means. The right to be a corporation, which the old corporation had, was not mortgaged and was not sold, and did not pass to the purchasers; and they only obtain such a right upon filing the certificate mentioned, and then they obtain it by direct grant from the state, and not in any degree by the sale and purchase of the franchises, etc., of the old corporation.

The last ground argued by counsel is, we think, equally untenable. There has been no violation of any contract. These mortgages, it is true, were all executed and the bonds

issued long prior to the passage of the tax act of 1886, already mentioned. The franchises of the corporations were duly mortgaged under the provisions of state laws, by which it was provided that purchasers at foreclosure sales under such mortgages could, upon compliance with the law, file certificates and become incorporated bodies. But such acts were, in no sense, contracts on the part of the state with persons purchasing bonds secured by such mortgages, or with future possible purchasers at foreclosure sales, that the provisions existing at the time of the mortgaging of the franchises for the incorporation of such purchasers should remain the same. I think this question has been decided in this way by the Supreme Court of the United States, and further discussion of it is unnecessary. (*Memphis & L. R. R. Co.* v. *Commissioners*, 112 U. S. 609.)

Whether the money exacted by the state on the incorporation of corporations, etc., is a tax, in the strict and limited sense of that word, or not is of no importance. It is a condition imposed by the state in the exercise of its undoubted power, upon the payment of which the certificate may be filed.

The orders of the Special and General Terms are right and should be affirmed, with costs.

All concur.

Orders affirmed.